IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ROBERT H. PETERSEN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DAIMLER CHRYSLER CORPORATION, et al., <br><br> Defendants. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br> Case No. 1:06-CV-00108-TC |

This matter comes before the court on Defendant Cooper Tire and Rubber's (Cooper) motion in limine to admit evidence of the "Wilcox Assignment" (Dkt. No. 523). Because damages in a cause of action for wrongful death are measured at the moment of death and not the date of trial, evidence of the Wilcox Assignment is irrelevant on the issue of damages. Accordingly, the reasons for Kim Wilcox's assignment are inadmissible. And to prevent confusion and unfair prejudice, it is necessary to exclude all evidence of the Wilcox Assignment, including the mere fact of the assignment. The court, therefore, DENIES Cooper's motion.

## BACKGROUND

Kim Wilcox was married to Bradley Wilcox (Bradley) at the time of the accident. But Ms. Wilcox, as Bradley's widow, is not a Plaintiff in this case because sometime before this lawsuit was filed, she assigned her interest in any possible recovery to Garth and Kathy Wilcox, Bradley's parents. Cooper seeks to introduce the fact that Ms. Wilcox assigned her interest to Mr.

and Mrs. Wilcox and the reasons for the assignment.

## ANALYSIS

Under Utah Code section 78B-3-106, "when the death of a person is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death." Utah Code Ann. § 78B-3-106. Any such wrongful death action "is maintained on behalf of all the heirs of the deceased," whether they are named plaintiffs or not. Tracy v. Univ. of Utah Hosp., 619 P.2d 340, 342 (Utah 1980); see also Oxendine v. Overturf, 1999 UT 4, ¶11, 973 P.2d 417 ("[W]hen a personal representative brings a wrongful death action, he does so for the benefit of all statutory heirs."). The damage awards in wrongful death cases "reflect the loss of the individual [heirs]." Oxendine, 1999 UT 4, ¶ 19, 973 P.2d 417. The fact finder must "analyze each heir's entitlement under the . . . elements ordinarily considered in determining the value of the survivor's claim." Id.

Under Utah law, an heir is entitled to assign any interest he or she might have in the recovery from a wrongful death action. In re Behm's Estate, 213 P.2d 657, 662 (Utah 1950). In allowing such an assignment, the Utah Supreme Court drew a distinction between the cause of action and the heir's interest in recovery, stating that although "the cause of action cannot be split between the heirs, the amount recovered can be and is." Id. Accordingly, an heir can assign his or her interest in the recovery without offending the rule that a cause of action for wrongful death is not assignable. Id. But when an heir assigns an interest, the heir "cannot depreciate the assignment by merely saying he does not want the fund he assigned." Id. at 644.

Although Utah law makes clear that Ms. Wilcox's assignment of her interest in any

possible recovery in this case is valid, whether the assignment and the reasons for it are admissible appears to be an issue of first impression. The way in which Utah courts have addressed the similar issue of an heir's post-accident, pre-trial remarriage provides guidance for the court.

Utah, like the majority of jurisdictions, has held that evidence of a surviving heir's remarriage at a time subsequent to the accident but before the trial is inadmissible. Shields v. Utah Light & Traction Co., 105 P.2d 347, 351-52 (Utah 1940); see also Annotation, Admissibility of Evidence of, or Prorpiety of Comment as to, Plaintiff Spouse's Remarriage, or Possibility Thereof, in Action for Damages for Death of Other Spouse, 88 A.L.R.3d 926 (1978) ("Although there is some authority to the contrary, it has generally been held that in an action for the wrongful death of a married person, evidence of the surviving spouse's remarriage is irrelevant on the question of mitigation of damages, and hence not admissible in evidence where offered only for that purpose."); Stuart M. Speiser & James E. Rooks, Jr., Recovery for Wrongful Death § 9:15 (4th ed. 2010) ("The majority rule that the remarriage of decedent's spouse will not reduce or mitigate damages in the wrongful death action is firmly entrenched."). The Utah Supreme Court's decision, like the decisions from other courts following the majority rule, was largely based on the "generally followed [principle] . . . that the pecuniary loss to the beneficiaries is to be based upon conditions as they existed at the time of the death complained of." Shields, 105 P.2d at 351.

Although the Utah Supreme Court was faced with the specific question of whether the remarriage of the surviving mother of the decedent was admissible, the decision in Shields, by its own terms, has a broader reach. The court defined the question before it as "whether in this

jurisdiction the damage should be measured as of the moment of death or, for all practical purposes, the day of the trial." Id. And the court held that "the fairest way to ascertain 'such damages * * * as under all the circumstances of the case may be just' is to limit the inquiry on this issue to the moment of death." Id. (internal citation omitted). In arriving at this conclusion, the court noted the "salient weakness" of the minority rule measuring damages on the day of trial: "if evidence of a change in the financial condition of a beneficiary for the better occurring subsequent to death but before trial is admissible, reason would require that likewise evidence of the sudden poverty or misfortune of the statutory party after the time of death and before trial should be received." Id.

Here, evidence of the Wilcox Assignment is inadmissible to mitigate damages because Shields makes clear that under Utah law, damages for wrongful death are measured at the moment of death and that changed circumstances occurring after death but before trial are irrelevant. Because Ms. Wilcox assigned her interest to her husband's parents sometime after his death, the fact of her assignment is irrelevant on the question of mitigation of damages and accordingly is inadmissible for that purpose. Because the fact of Ms. Wilcox's assignment is inadmissible to mitigate damages, so too are the reasons for her assignment.[1]

But this does not end the inquiry. Though evidence of the Wilcox Assignment is not relevant to the question of damages, it may be admissible for some other purpose. Again, the way

---

[1] In allowing an heir to assign his or her interest, the Utah Supreme Court made clear that the heir could not decrease the value of the assignment merely by saying he or she does not want the interest assigned. In re Behm's Estate, 213 P.2d at 644. Accordingly, in addition to being irrelevant for the reasons discussed above, evidence of Ms. Wilcox's reasons for the assignment cannot be used to decrease the value of the claim she assigned.

in which courts have addressed this issue as it pertains to remarriage is informative.

Among the jurisdictions following the majority rule that remarriage is inadmissible on the question of mitigation of damages, there is a split in authority on whether the mere fact of a surviving spouse's remarriage may be brought out in a wrongful death action. In one of the earliest cases admitting the fact of remarriage, the New Jersey Supreme Court held that "the mere fact of a plaintiff's remarriage should not be kept from the jury," rather, the "trial judge should instruct the jury, at the beginning of the case, that the plaintiff has remarried but that this fact is to play no role in their determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased." Dubil v. Labate, 245 A.2d 177, 180 (N.J. 1968). The court reasoned that to hold otherwise "would be offensive to the integrity of the judicial process. . . . [T]he desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury." Id. And the court found that "in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths." Id.

Other courts following the Dubil approach have similarly based their decisions on the dishonesty that excluding all mention of remarriage would require. See, e.g., Smyer v. Gaines, 332 So. 2d 655, 658 (Fla. Dist. Ct. App. 1976) (discussing a portion of Florida Wrongful Death Act allowing fact of remarriage for purpose of "allowing the truth to be known and to keep the court from having to participate in a fraud upon the jury"); Watson v. Fischbach, 301 N.E.2d 303, 306 (Ill. 1973); Glick v. Allstate Ins. Co., 435 S.W.2d 17, 23 (Mo. Ct. App. 1968). The rationale underlying these decisions is two-fold. First, when the case involves a female widow who has remarried, the court is presented with the choice of misrepresenting the woman's name

to the jury (using the deceased former spouse's surname) or using her current legal name, which runs the risk that the jury will speculate as to why she does not share the decedent's name. Second, exclusion of any mention of remarriage might complicate the parties' ability to effectively question potential jurors during *voir dire* to determine if any have a relationship with the plaintiff's new spouse.

Several jurisdictions have maintained that all evidence of a surviving spouse's remarriage is inadmissible, including the mere fact of remarriage. See, e.g., Benwell v. Dean, 57 Cal. Rptr. 394, 402-03 (Ct. App. 1967); Helmick v. Netzley, 12 Ohio Misc. 97, 97, 229 N.E.2d 476, 477 (1967); Rodak v. Fury, 298 N.Y.S.2d 50, 53 (N.Y. App. Div. 1969); Wiesel v. Cicerone, 261 A.2d 889, 895 (R.I. 1970). These decisions are largely based on the concern that admitting the mere fact of the remarriage "could very well have a tendency to confuse the jury and adversely prejudice the plaintiff," and would be "putting a premium on form and overlooking substance." Wiesel, 261 A.2d at 895.

Consistent with the full-exclusion approach, the Tenth Circuit has upheld an order excluding any mention of remarriage, because such evidence "was completely irrelevant." Nichols v. Marshall, 486 F.2d 791, 794 (10th Cir. 1973). The Tenth Circuit was unconvinced by the defendant's argument that his right to *voir dire* was prejudiced by the order excluding any mention of remarriage and noted that "counsel would be very unimaginative if, as he claims, he could not adequately question the jurors without disclosing that [the plaintiff] had remarried." Id.

Here, the reasons underlying the decisions to admit the mere fact of remarriage are not present. Unlike the situation presented by a surviving spouse who has remarried, the Wilcox Assignment creates no issues for *voir dire*; there simply is not an additional party that potential

jurors must be questioned about as a result of the assignment. And the court will not be put in the position of misrepresenting Ms. Wilcox's status to the jury; as one of her husband's heirs, Ms. Wilcox is entitled to recover regardless of whether she is a named Plaintiff. See <u>Tracy v. Univ. of Utah Hosp.</u>, 619 P.2d 340, 342 (Utah 1980). Even the <u>Dubil</u> court acknowledged that evidence of remarriage presents a unique problem unlike other categories of evidence, such as insurance coverage, because it is nearly impossible to keep the fact of remarriage from the jury without resort to untruths. 245 A.2d at 180. Here, it will be possible to keep the Wilcox Assignment from the jury without resorting to untruths.

Further, the court finds that the rationale of courts applying the full-exclusion rule is persuasive. Admitting the fact of the Wilcox Assignment could very well tend to confuse the jury and prejudice Plaintiffs, especially given the infrequency with which such assignments take place.[2] This potential for confusion is greater than that created by the possibility, as Cooper contends, of having differently styled jury verdict forms for Bradley Wilcox as compared to other married decedents.[3] As the Tenth Circuit noted in <u>Nichols</u>, this court and counsel for both parties would have to be very unimaginative if they collectively are unable to style a jury verdict form that simultaneously will not disclose the fact of the Wilcox Assignment and will not confuse the jury.

---

[2] When compared with the remarriage of a surviving spouse, the uniqueness of Ms. Wilcox's assignment increases the likelihood that the mere fact of the Wilcox Assignment would confuse the jury and prejudice the Plaintiffs.

[3] The likelihood that the jury verdict form will cause confusion is almost entirely alleviated by fact that the court can instruct the jury that all wrongful death actions in Utah are maintained on behalf of all of the decedent's heirs, whether named plaintiffs or not.

Accordingly, the fact that Ms. Wilcox assigned her interest, the reasons for her assignment, and the mere mention of the Wilcox Assignment are inadmissible. If, however, Plaintiffs open the door, such evidence may become relevant. But both parties are strongly instructed not to wander into issues touching on the assignment.

**CONCLUSION**

For the foregoing reasons, the court DENIES Cooper's motion to admit evidence of the Wilcox Assignment (Dkt. No. 523).

SO ORDERED this 22nd day of July, 2011.

BY THE COURT:

_Tena Campbell_
TENA CAMPBELL
United States District Judge